Good morning, Your Honor, and may it please the Court, I'm Jeff Shaw from ORCA for the petitioner Ramon Dominguez. I'd like to focus my argument this morning on the jurisdiction of the Immigration Court. I'll reserve two minutes for rebuttal, if that's all right with you. Very good. The Supreme Court has underscored that the government needs to turn square corners with notices to appear. Because an MTA is the basis for commencing a great legal proceeding, the INA and its implementing regulations require that every notice to appear state the charges against the alien and the statutory provisions alleged to have been violated. These mandatory rules serve to ensure that the most basic building blocks of due process are protected by guaranteeing that a noncitizen can understand the charges against him and put on an appropriate defense. The NTA in this case did not follow these rules and did not achieve these ends. Where it was supposed to identify the state law conviction that the government claimed made Mr. Dominguez removable, it provided the wording of one state crime but gave the number for another. In other words, it actively injected misinformation into the charging document. I guess let me ask you why the title of the crime, to the extent that's even what was being conveyed, because actually the California statute doesn't give a title for the crime. It just says A, B, C, right? So the correct statutory provision was provided, and a description certainly of the conduct that encompasses your client's offense was given. A gun is a deadly weapon. So I guess I'm not sure why there would even be any confusion on your client's part. Well, Your Honor, the wording that it gave, assault with a deadly weapon, is drawn specifically from a different section of the statute. That only appears in Section 245A. And if you look at the NTA, it gave that with capital letters and with an article as if that were a charge. And so even though it did say 245A2, this was naturally confusing for somebody like Mr. Dominguez who would see the first part of the statement pointing towards Section 245A and then the second part of the statement pointing towards Section 245A1 and then the second pointing towards Section 245A2. But a gun is a deadly weapon, right? So what kind of argument could he have made that would be actually successful and different based on whether he had a gun or some other deadly weapon? Your Honor, a clear jurisdictional rule is critical and required by the regulations and the statute in this context because it's so important for the petitioner to know the exact statutory charge at the beginning of the case if he's going to have any starting point for doing a defense. But what happened here was that the government put an extra obstacle in his way. And you'll see in the record him make – sorry, it led him astray. He was making arguments that weren't directly relevant to whether Section 245A2 is a crime of violence under the categorical approach. You see him dragged into questions, like Your Honor mentioned, about whether a gun is inherently a deadly weapon as a matter of law. You see him trying to evaluate whether 245A1 and 245A2 are really different. These are inquiries that would not, strictly speaking, have been required if it had just given the correct charge to begin with. And we think this is an example in which the confusion is clear from the record. Even the judge was confused if you look at AR168. And essentially, Mr. Dominguez was put in a position where he had to defend himself from multiple hypothetical versions of what the government meant to charge. I just don't really understand how the defense is different, though. I understand that he was trying to correct it and the judge was a little bit confused. But how it actually matters, I'm having trouble understanding. Well, Your Honor, we accept that the inquiry for 245A1 and 245A2 are similar under the categorical approach. But for somebody that is trying to mount a pro se defense in removal proceedings from a detention center, trying to go through all of these different paths is inherently prejudicial. And even though after fits and starts he did manage to make an argument about A2, that's still an obstacle that was needlessly put in his way and one that's not legally required. I understand this Court has seen a number of cases where the petitioner alleges that a Pereira error divested the Court of Jurisdiction where it didn't state the time and place to appear. I want to be clear that that's not what we're arguing here. We're arguing that the failure to state the statutory subsections alleged to have been violated in the charges against an alien divested the Court of Jurisdiction. And the case law framework that this Court developed in Karen Giffey handles this situation perfectly well. The rule of that case, as developed in Karen Giffey and Aguilar for Mean, is that where there is a regulatory violation, there's no jurisdiction. And then when there's not a regulatory violation, there is jurisdiction. I think it's telling that the government does not try to defend the MTA on its merits. It acknowledges that it was invalid under the regulations. And it does not try to make any argument that the Karen Giffey framework shouldn't apply. So if a case is remanded and it goes back to the immigration judge, what argument could he make at that point? Well, if the case is remanded for the BIA to evaluate jurisdiction in the first instance, then I expect that Mr. Dominguez would put on an argument similar to the one we've done today. It's important to note that the BIA, although it has addressed whether there's jurisdiction in the case of a career of failure, and in the case where the notice to appear doesn't state the address of the immigration court, the BIA does not have a published precedent on the jurisdictional implications of these particular regulatory provisions. So if your honors are hesitant to rule on just the basis of the regulations alone, a remand could be appropriate in that respect. But if the court does vacate the order of removal, which is what we're asking for, then it would be up to the government to decide whether they could or would seek to recharge him. And that issue is not before the court today. Okay. So I'm clear on the question I asked earlier. Your position, I gather, is not that the, in order to comply with the reg, that the NTA has to specify the formal title of the offense. It's just that here, in attempting to do that, the NTA caused confusion, and that's what causes the regulatory violation, supposedly. The regulatory violation here, so it did say 24582, it gave the number, but then the words that preceded that actively injected wrong information by pointing to a different statutory subsection. And so we think this is different from a case like Lozaro, where... But you say that all of the letters were in lowercase. I think if all of the letters were in lowercase, Your Honor, it would be a little bit easier to argue that it was just giving the genus and the species. But I think here it's not that, because it used wording that only appears in the other statutory subsection. It uses the article and it uses the capital letters. And so this is really a case where it was contradicting itself. That's different from the situation the Court confronted in Lozaro, where you had just one level of generality too high. So, for example, if it had just said 245A, then I think we might have an argument that that was good enough and you could figure out what's going on. But here it really did say basically A1 and A2. And for a petitioner like Mr. Dominguez, that is a very confusing situation, and that's a troubling ramification throughout the life of the case. If the Court doesn't have further questions, I'll reserve the rest of my time for rebuttal. Okay, very good. Thank you, Your Honor. Let's hear from the government. May it please the Court. Good morning. Matthew Spurlock on behalf of the United States. I'll go ahead and start where counsel left off on the issue of jurisdiction of the Immigration Court. And as a brief argues, first of all, I'd argue that this issue wasn't even really brought up to the Board of Immigration Appeals and exhausted before the Board. Now, granted, this was a pro se petitioner, and so that would be taken into account whether by raising the fact that he identified that in his NCA that it had the wrong name of the exact part of the statute. Instead of saying firearm, it said deadly weapon. But he doesn't ask the Board to terminate proceedings. He didn't ask the immigration judge to terminate proceedings for lack of jurisdiction. Instead, what the petitioner argued before the Board was that the government had failed to show clear and convincing evidence that he was, in fact, guilty of that sort of mystery offense, which would be a 245E2 deadly weapon, because there's no such offense as that. But as I argued in the government's brief, I think Lazaro Mukasey does, in fact, address this exact situation where it says that the failure of the NTA to list the specific section of the convicted events did not prevent jurisdiction to vest with the Immigration Court. And I think it is a very similar situation, because what we're talking about here is we're talking about the regulation that lays out what specific things should be included in the NTA. But then there's also, first of all, there's a presumption of regularity of the administration of the Board and the DHS issuing these sorts of notices. So there's a presumption of regularity. But in this case, it actually does have the exact correct section that he was charged under. It's the exact section he was charged under. It is rarely stated it was an assault with a deadly weapon, not assault with a firearm. And I think it's interesting that Petitioner claims that this caused great confusion, but Petitioner was the one who brought it to the immigration judge's attention that he was actually convicted of firearm, not deadly weapon, but the charging, the exact section was correct. Can I ask if the charging section, the 245A2, if it had instead said 245A1, so it was just completely wrong, then would the Immigration Court have lacked jurisdiction? Your Honor, I think that is a closer question, because I think then you would have, if you listed the completely wrong statute or section, and especially if there were different requirements for making a categorical approach under that other section, which there isn't here, but if there were, then that would possibly raise the issue of whether or not the Petitioner was able to present a defense of, you know, what he was actually charged with. I think that's a closer question. But I think here Let me just get clear. What you just alluded to maybe sounds more in due process. I was asking specifically, is the government's view that if the statute that had been mentioned in the NTA was incorrect, that jurisdiction would never have attached? I think we would argue still that jurisdiction would attach, and I don't think that it becomes a jurisdictional issue, because like I said, first of all, there's an opportunity for all the other bases of why you get a notice to occur that are listed in the regulation. And it specifically says, just because you don't get one of these specific requirements, it doesn't necessarily lead to the fact that there's no jurisdiction in the case. Jurisdiction attaches as soon as the individuals given the notice occur, given the notice, and that notice has been filed with the Immigration Court. I would argue that's correct. That falls more in line with the due process argument that they are somewhat connected in some ways, and that's from the Coley case where they sort of talked about the interchangeability of whether the jurisdiction question is whether you consider that in conjunction with the due process where the petitioner can't show any sort of prejudice whatsoever from either the alleged mistake or defect with the NTA. But we certainly don't have that here where the petitioner was fully aware of exactly what he was charged with and, in fact, corrected the immigration judge when the immigration judge asked him if he was, in fact, convicted as charged in the NTA. Now, it's also worth noting that the petitioner understood the difference between A1 and A2. In his filing reply to the government or to DHS's brief to the immigration judge regarding 212H eligibility and, in fact, that's one thing that he argued was that the two were, you know, he's charged as 212A2, but the matter of rule was only dealing with 212A1, I'm sorry, 245A1. So it's clear that he understood the distinction, and that's also brought out in his brief to the board, although he doesn't specifically request that the case be terminated. In fact, he just argued that the charges did not. Why wouldn't the government have just fixed this? I don't understand why. As you said, he pointed this out to everybody, including, I guess, DHS's counsel. Why wasn't the NTA amended and fixed? That's a very good question, Your Honor. It certainly seems that that's something that would have certainly made this neater and clearer and wouldn't have created the issue that was raised in this briefing. But I think the answer to that is that there's such a lack of any difference between A1 and A2 for all purposes that this court has to look, or that the board has to consider, A, whether he's an aggravated felon for a crime of violence or convicted of a crime involving moral turpitude, that this doesn't matter. For all intents and purposes, it's the same. And so was that possibly sloppy, but it didn't have any impact on how the case was going to be litigated, either at the immigration court level, the board level, or before this court. It doesn't make any difference. Sorry, before we run out of time, could I ask you about a different issue? I'd like to ask about the equal protection challenge on the LPR issue, the last claim in the case. Could you explain what the rational reason is for treating LPRs differently, depending on when they got status? I think the answer to that question, Your Honor, is that it is similar to what we raised in the Taniguchi case. The basis for why Congress would have acted to basically prevent people who were admitted into the country as LPRs was basically, I think essentially you can draw the same exact logic from Taniguchi to this particular subset of individuals who are barred from challenging their invisibility. And so can you just say what that logic is? Well, I think the one thing is that, just off the top of my head from Taniguchi, would be that individuals who were given that chance to, this is just one example, I think there were several listed in Taniguchi, individuals who were given that chance when entering the United States arguably were sort of given more of a benefit, I think, is what sort of the argument was, where somebody who wasn't given that benefit may be more likely to not violate criminal laws. That's, I think, if I understood the understanding of Taniguchi, Your Honor. But I think the idea here is either category would have violated a law, and the question is what's the implication of that? So I'm still not following the logic here that would be rational from what you just said. Right. And I think I would also pull back, Your Honor, to the position that on these sorts of issues, that there's sort of a, I believe it's kind of a presumption that we, that when Congress makes those decisions, which in the McRaney case, they, the court found that this was clearly something that the Congress would have decided, that it wasn't just by accident, that essentially that there could be a lot of rational reasons why they would make that decision, that they made that distinction, but it was nevertheless the distinction that they made. I mean, is that basically saying there's no, there's no right to rational basis review at all? Anything Congress does should just be considered rational? No. I don't believe that's the answer, is that that would be no standard at all. But I think that what the, essentially what the standard is, is that it's the government, or the Congress has given a wide berth of what would be a rational basis for making those types of distinctions. And I guess I'm just looking at, kind of confused if that's how you say the case, and I thought there the distinction was between LPRs and non-LPRs, not this distinction within the category of LPRs. That's correct, Your Honor, and that's, and I think I was just making the point, is that it would be for some more reasons, and I don't, I don't know that, other than to say that it's, that would be a sign of what's rational. You know, the difference between being an LPR or not an LPR, or somebody who was admitted as an LPR, as opposed to someone who became an LPR once they were already in the United States. I think some of the same, some of the same rationale would apply. If somebody entered the United States and was given that status as they entered the United States, that would, you know, they've already been sort of given that benefit, whereas somebody, you know, up front and then they still violated the law, then that would put them in a different light than somebody who had trusted when they were already in the United States. Go ahead. Okay. Any further questions from? No questions for me. Okay, very good. Thank you for your argument. Let's hear from Counselor, the Petitioner, and Rebuttal. Thank you, Your Honor. Just a few words on exhaustion. Mr. Dominguez did point out this error repeatedly to both the Immigration Court and the BIA, and while he didn't specifically say that the error had jurisdictional implications, that's more than enough to put the BIA on notice of the error and give the agency the opportunity to fix it in the first instance. Imagine if a litigant in a diversity case said that the amount of controversy is less than $75,000. It would be odd to say they hadn't raised a jurisdictional objection just because they didn't complete the sentence and say, and this has jurisdictional implications. On prejudice, the government cites COLE, and I'd like to say a word about the COLE standard. That case was not applying Karen Giffey. It was a 2007 opinion that didn't deal with one of the requirements that is jurisdictional under the regulations, and the court went out of its way to say that it was not applying a regulation that was designed to protect a fundamental right of the petitioner, and so it's a bit of an odd duck in proceedings like this. Nevertheless, if the court thinks the COLE standard applies here, it's a low standard. It just says that you have to show some impact on your rights. It does not require you to prove that the outcome would have been different, and so we think that it's clear that there was some impact on your rights if you have to defend yourself in proceedings on which you never received clear notice of the charge at the beginning. And I would note on that that this is similar to a context in which the court has recognized structural error in the criminal context where an indictment is botched. It's assumed that that had prejudicial ramifications throughout the life of the case in a way that might not be entirely apparent from the transcript. Finally, the government points out that Mr. Dominguez tried to correct this, and I would just like to say that even though he said that, that was not in any way a correction of the charge. He was just trying to draw attention to this issue and requested clarification. He might have known what his charge was, but he didn't know what was in the government's mind. He didn't know what they were seeking to charge him with, and that is the source of the prejudice here. Finally, on equal protection, Taniguchi did deal with the distinction between LPRs and non-LPRs, and we would submit that those justifications simply don't apply to this distinction within the subcategory of LPRs. What the government says is that the rationale there was that essentially LPRs, there's kind of, I don't know, we're going to hold you to a higher bar because you've been extended this special benefit, and so then when you breach our criminal norms in this country, there's kind of a greater breach of trust, and so therefore it kind of makes difference to impose harsher treatment on that category. I think what counsel was saying is that the same rationale arguably applies to those who get the extra benefit of not even having to come into the country, wait a while, then adjust, just get the benefit straight out. What's your response to that? Well, we would respect, definitely submit that that justification doesn't apply because both of these are in LPR status, and that irrationality of holding people who adjusted to LPR status to some sort of higher bar or claiming that they're more deserving is particularly irrational when you think about the circumstances of this case where Mr. Dominguez came to the United States when he was 3 years old. He had absolutely no role to play or volition in the status that he was assigned. It was just a matter of paperwork, and to extend the opportunity for discretionary relief to somebody with a certain paperwork status over which he had no control or intentionality as it pertains to the same child. Yeah, but Congress is entitled to legislate against entire broad categories of people who don't have to focus on 3-year-olds who get LPR status. When they get admitted, they can be thinking of adults. I guess I'm just trying to get at why is the rationale, given especially how lenient the lenient progressional basis review standard is, the rationale is simply that your breach of trust is of a greater magnitude, and that's why we're going to be less forgiving why across the entire category of people who were admitted as LPRs straight out is that rationale not correct? Well, Your Honor, we think that the category of LPRs is a single category, and I was offering the example of coming here as an illustration of how that can be irrational for many people, and so I take your point that Congress has to legislate in broad batches. But when you look at how that applies, it's clear that they're sweeping very, very broadly and drawing distinctions that are quintessentially irrational under legal protection laws. So we respect the request that you vacate if you are removable. Thank you very much. Very good. Before you depart, the electorate counsel on behalf of the court, I'd like to thank you and your colleagues at work for being willing to take this case on a pro bono basis. It's a tremendous service to the court, and we are very grateful that you're willing to do that. Thank you, Your Honor. Thank you. All right. The case just argued is submitted. We'll move to the next and last case on the calendar for argument today.
judges: WATFORD, FRIEDLAND, Robreno